UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────

DEVON KIDD,

                            Plaintiff,            Case # 18-CV-217-FPG

v.                                                 DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.
───────────────────────────────

## INTRODUCTION

Plaintiff Devon Kidd brings this action pursuant to the Social Security Act seeking review of the denial of his Title XVI Supplemental Security Income ("SSI") application. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 9, 11. For the reasons that follow, the Commissioner's motion is GRANTED and Plaintiff's motion is DENIED.

## BACKGROUND

On March 29, 2014, Kidd protectively applied for SSI with the Social Security Administration ("the SSA"). Tr.[1] 136-44. He alleged disability since December 27, 1996 due to substance abuse, arthritis, hypertension, knee issues, post-traumatic stress disorder, anxiety, and depression. Tr. 65-66. Kidd later amended his alleged disability onset date to March 29, 2014. Tr. 35. On September 22, 2016, Kidd and a vocational expert ("VE") testified at a hearing before Administrative Law Judge Stephen Cordovani ("the ALJ"). Tr. 31-64. On November 29, 2016, the ALJ issued a decision finding that Kidd was not disabled. Tr. 10-25. On December 12, 2017,

---

[1] "Tr." refers to the administrative record in this matter. ECF No. 7.

1

the Appeals Council denied Kidd's request for review. Tr. 1-6. This action seeks review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

**I.     District Court Review**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine de novo whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

**II.    Disability Determination**

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id.* § 404.1509. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ analyzed Kidd's claim for benefits under the process described above. At step one, the ALJ found that Kidd had not engaged in substantial gainful activity since the amended alleged onset date. Tr. 12. At step two, the ALJ found that Kidd has the following severe impairments: bilateral pes planus deformity; bilateral talonavicular joint osteoarthritis with spurring; bilateral sclerosis for the first MTP joints; status post repair of the right ACL with

subsequent chondroplasty and debridement with continuing chondromalacia; obesity; generalized anxiety disorder; and depressive disorder. Tr. 12-13. At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal any Listings impairment. Tr. 13-14.

Next, the ALJ determined that Kidd retains the RFC to perform light work[2] with additional limitations. Tr. 14-24. Specifically, the ALJ found that Kidd can frequently climb ramps and stairs but cannot climb ladders, ropes, or scaffolds; can frequently stoop and balance and occasionally kneel, crouch, crawl, and squat; and cannot work on uneven ground or around unprotected heights or dangerous, moving, mechanical parts. Tr. 14. As to his mental capacity, the ALJ found that Kidd can understand, remember, and carry out simple instructions and tasks; occasionally understand, remember, and carry out complex instructions and tasks; and frequently interact with supervisors, co-workers, and the public. Tr. 14-15.

At step four, the ALJ indicated that Kidd has no past relevant work. Tr. 24. At step five, the ALJ relied on the VE's testimony and found that Kidd can adjust to other work that exists in significant numbers in the national economy given his RFC, age, education, and work experience. Tr. 24-25. Specifically, the VE testified that Kidd can work as a routing clerk, marking clerk, and inspector. Tr. 25. Accordingly, the ALJ concluded that Kidd was not disabled. *Id.*

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 416.967(b).

## II. Analysis

Kidd argues that remand is required because the ALJ erred by (1) relying on the stale opinions of consultative examiners Donna Miller, D.O. and Susan Santarpia, Ph.D.; and (2) affording great weight to Dr. Santarpia's opinion without explaining how that opinion was consistent with the RFC determination. ECF No. 9-1 at 16-19. The Court addresses these arguments in turn below.

### A. Drs. Miller and Santarpia's Opinions were not Stale.

Kidd argues that the ALJ improperly relied on Drs. Miller and Santarpia's opinions, which were stale because they were rendered more than two years before the ALJ issued his decision and Kidd's impairments "appreciably worsened" after those examinations. ECF No. 9-1 at 16-18.

A stale medical opinion does not constitute substantial evidence to support an ALJ's findings. *See Camille v. Colvin*, 104 F. Supp. 3d 329, 343-44 (W.D.N.Y. 2015) (quotation marks and citation omitted), *aff'd*, 652 F. App'x 25 (2d Cir. 2016) (summary order). A gap of time between when an opinion is rendered and the disability hearing and decision does not automatically invalidate that opinion; however, such an opinion may be stale if the claimant's condition deteriorates during that time. *See, e.g.*, *Welsh v. Colvin*, No. 14-CV-6715P, 2016 WL 836081, at *12 (W.D.N.Y. Mar. 4, 2016) (finding that an opinion rendered before the "significant deterioration" of the claimant's mental status could not "constitute substantial evidence supporting the ALJ's determination"); *Jones v. Comm'r of Soc. Sec.*, No. 10 CV 5831(RJD), 2012 WL 3637450, at *2 (E.D.N.Y. Aug. 22, 2012) (the ALJ should not have relied on a medical opinion in part because it "was 1.5 years stale" as of the plaintiff's hearing date and "did not account for her deteriorating condition").

On August 6, 2014, Dr. Miller examined Kidd and opined that he "has mild limitation for heavy kneeling, squatting, and repetitive heavy lifting and carrying." Tr. 250-53. Dr. Miller also performed a right knee x-ray that revealed "no significant bony abnormality." Tr. 248-49. The ALJ afforded significant weight to Dr. Miller's opinion because she understands the SSA's program and examined Kidd, and it was consistent with the record as a whole. Tr. 22-23; *see* 20 C.F.R. § 416.927(c)(1), (4), (6).

On August 6, 2014, Dr. Santarpia performed a psychiatric evaluation of Kidd and opined that he can follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration and a regular schedule, learn new tasks, make appropriate decisions, and appropriately deal with stress. Tr. 239-43. She also opined that Kidd has mild limitation in his ability to perform complex tasks independently and relate adequately with others. Tr. 242. The ALJ gave great weight to this opinion because Dr. Santarpia understands the SSA's program and examined Kidd, and it was consistent with Kidd's report of social functioning, financial acumen, and pastimes of reading, journal writing, and playing chess. Tr. 23; *see* 20 C.F.R. § 416.927(c)(1), (4), (6).

The record does not support Kidd's assertion that his conditions deteriorated after Drs. Miller and Santarpia rendered their opinions. As to his right knee issues, Kidd had arthroscopic knee surgery on December 26, 2014. Tr. 392-93. Kidd argues that this shows that his condition worsened after Dr. Miller's physical examination, especially because the x-ray she performed showed no significant bony abnormality, but he had knee issues long before this surgery and Dr. Miller noted the same in her report. Tr. 250. Regardless, the record reveals that Kidd did well after surgery—at an examination on March 5, 2015, Kidd noted continued knee soreness but "recognize[d] his knee will not be 100% again," stated that "he is ok and content with how his

knee feels," and asked to discontinue physical therapy. Tr. 492-93; *see also* Tr. 393 (indicating that Kidd "tolerated the procedure well"). Examination findings that day revealed well-healed surgical sites, no obvious instability, and intact motor strength. Tr. 492.

On July 20, 2015, Kidd sought knee treatment after he stepped off a curb and felt a "pop" and was diagnosed with a sprain/strain. Tr. 529-31. An x-ray performed that day revealed evidence of his prior knee surgery but was otherwise unremarkable. Tr. 528. After an MRI performed a few days later, Kidd's doctor continued to diagnose a sprain/strain and offered him a cortisone injection to alleviate inflammation. Tr. 521. Kidd received another MRI in February of 2016, which revealed "[n]o progressive findings or adverse interval changes" since his July 2015 MRI after the sprain. Tr. 563-64. Kidd received periodic physical therapy throughout the relevant period, but was frequently non-compliant with attending scheduled sessions. Tr. 434, 438-45, 635-42.

Kidd's knee surgery, sprain injury, and conservative treatment do not reveal a significant deterioration of his knee condition after Dr. Miller rendered her opinion. Moreover, the ALJ recognized and discussed Kidd's knee surgery and sprain injury and other evidence that post-dated Dr. Miller's opinion when making his RFC determination. Tr. 18, 20. There is no evidence that the RFC determination does not adequately account for Kidd's knee issues, and Kidd does not suggest that any specific additional limitations were warranted.

As to his foot issues, Kidd asserts that a September 19, 2014 x-ray that revealed bilateral pes planus deformity, bilateral talonavicular joint OA with spurring, and bilateral sclerosis of the first MTP joints undermines Dr. Miller's opinion. ECF No. 9-1 at 17-18; Tr. 407. It is unclear, and Kidd does not explain, how this indicates a worsening of Kidd's foot condition. The record demonstrates a long history of foot issues, and it is unlikely that Kidd experienced a major change

in his condition between the August 6, 2014 examination and the September 19, 2014 x-ray. In fact, Kidd stated at his hearing before the ALJ and his examination with Dr. Miller that he has had bilateral foot pain "all his life." Tr. 42, 250. There is no evidence that the RFC determination does not adequately account for Kidd's foot issues, and Kidd does not suggest that any specific additional limitations were warranted.

As to Kidd's mental health, he merely asserts that he "underwent much mental health treatment" after Dr. Santarpia's examination, which ultimately led physician's assistant Jessica Utech to render a more restrictive opinion. ECF No. 9-1 at 18. The Court rejects this argument— "[j]ust because the claimant continues treatment after an opinion is rendered . . . does not mean that the opinion is stale." *Palistrant v. Comm'r of Soc. Sec.*, No. 16-CV-588-FPG, 2018 WL 4681622, at *6 (W.D.N.Y. Sept. 28, 2018). Kidd does not argue that the ALJ improperly analyzed PA Utech's opinion; rather, he asserts that the ALJ "should have developed the record with current opinion evidence." ECF No. 9-1 at 18. But the ALJ considered the evidence that post-dated Dr. Santarpia's opinion and it generally revealed appropriate behavior and affect, logical thought processes, normal perception, fair or good judgment and concentration, and intact memory. Tr. 19, 295, 657. On March 3, 2015, Kidd reported that he stopped taking mental health medications, denied significant depression, and decided to stop treatment. Tr. 19, 468. This evidence does not demonstrate that Kidd's mental health condition significantly deteriorated after Dr. Santarpia rendered her opinion or suggest that the ALJ needed to obtain an updated assessment of Kidd's mental health.

For the reasons stated, the Court finds that Drs. Miller and Santarpia's opinions were not stale and that the ALJ did not err when he relied on them. *See Barber v. Comm'r of Soc. Sec.*, No. 6:15-CV-0338 (GTS/WBC), 2016 WL 4411337, at *7 (N.D.N.Y. July 22, 2016) (citations

omitted) ("It is well established that an ALJ may rely on the medical opinions provided by State agency consultants and that those opinion[s] may constitute substantial evidence.").

B.     The RFC Determination Adequately Accounts for Dr. Santarpia's Opinion.

Kidd also argues that the ALJ erred by affording great weight to Dr. Santarpia's opinion without explaining how her opinion supported the RFC determination. ECF No. 9-1 at 18-19. Specifically, Kidd argues that Dr. Santarpia's opinion that he has "mild impairment" in his ability to adequately relate to others is inconsistent with the RFC determination that Kidd can frequently interact with coworkers, supervisors, and the public. *Id.*

An ALJ is not required to "reconcile explicitly every conflicting shred of medical testimony," *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d 288, 297 (W.D.N.Y. 2006) (citation omitted), and "[t]here is no absolute bar to crediting only portions of medical source opinions," *Younes v. Colvin*, No. 1:14-CV-170 (DNH/ESH), 2015 WL 1524417, at *8 (N.D.N.Y. Apr. 2, 2015). Nonetheless, when the ALJ's RFC assessment "conflicts" with a medical source's opinion, he "must explain why the opinion was not adopted." *Dioguardi*, 445 F. Supp. 2d at 297 (quoting S.S.R. 96-8p, 1996 WL 374184, at *7 (S.S.A. July 2, 1996)). Thus, when an ALJ adopts only portions of a medical opinion, he must explain why he rejected the remaining portions. *Raymer v. Colvin*, No. 14-CV-6009P, 2015 WL 5032669, at *5 (W.D.N.Y. Aug. 25, 2015) (citation omitted). It is not required, however, that the RFC assessment "perfectly correspond" with any of the medical source opinions cited in the ALJ's decision. *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citation omitted) (summary order). Rather, the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Id.*

Although Kidd asserts that the RFC determination does not align with Dr. Santarpia's opinion, there is no evidence that the ALJ's finding that Kidd can frequently—but not constantly—

9

interact with others is inconsistent with Dr. Santarpia's opinion that Kidd has mild limitations in his ability to do so. Thus, because the ALJ's RFC determination did not conflict with Dr. Santarpia's opinion, additional explanation on this issue was not warranted. Moreover, the ALJ discussed other record evidence in support of this finding, including that Kidd socialized with friends and family, went to church, shoveled for neighbors, and cared for his grandparents. Tr. 16, 21, 22, 37-39, 171, 241, 449. Accordingly, for the reasons stated, the Court finds that the ALJ did not err on this basis.

## CONCLUSION

The Commissioner's Motion for Judgment on the Pleadings (ECF No. 11) is GRANTED and Plaintiff's Motion for Judgment on the Pleadings (ECF No. 9) is DENIED. Plaintiff's Complaint (ECF No. 1) is DISMISSED WITH PREJUDICE. The Clerk of Court will enter judgment and close this case.

IT IS SO ORDERED.

Dated: March 19, 2019
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court